UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



RECEIVED
JAN 02 2013
U.S.D.C. S.D.N.Y.
CASHIERS

| | |
|---|---|
| SMILE TRAIN, INC.,<br><br>               Plaintiff,<br><br>      v.<br><br>BRIAN F. MULLANEY,<br><br>              Defendant. | Case No. 12-cv-9102 (JGK)<br><br>(ECF Case) |

## FIRST AMENDED COMPLAINT

Plaintiff Smile Train, Inc. ("Smile Train"), for its complaint against the defendant Brian F. Mullaney ("Mullaney"), alleges as follows:

### NATURE OF THE ACTION

1.  This is an action by Smile Train to recover damages arising from Mullaney's infringement of Smile Train's copyrighted material and misappropriation of Smile Train's trade secrets, and to enjoin Mullaney's future infringement and misappropriation thereof. Smile Train seeks damages, preliminary and permanent injunctive relief, and other relief as set forth below.

### PARTIES

2.  Smile Train is a Section 501(c)(3) nonprofit corporation organized under the laws of the state of New York, with its principal place of business located at 41 Madison Avenue, New York, New York 10010. Smile Train is a leading charitable organization whose mission is to solve the problems of individuals born with cleft lips and cleft palates on a global basis. Smile Train operates to effectuate its mission throughout the world with various affiliated entities and facilities in a number of countries.

3.      Mullaney is an individual who works in the state of New York and, upon information and belief, resides in the state of Connecticut.  Mullaney was a co-founder of Smile Train and formerly served as its Chief Executive Officer and President.  Mullaney also served as a member of Smile Train's Board of Directors from 1999 until June of 2012.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over Smile Train's copyright infringement claims pursuant to 17 U.S.C. § 501, 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). The Court also has subject matter jurisdiction over Smile Train's claims arising under the laws of the State of New York, pursuant to 28 U.S.C. § 1332(a), because the matter in controversy exceeds the sum of $75,000 and plaintiff, Smile Train, and defendant, Mullaney, are citizens of different states.

5.      The Court has supplemental jurisdiction over Smile Train's claims arising under the laws of the State of New York, pursuant to 28 U.S.C. § 1367(a), because these claims are so related to Smile Train's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to plaintiff's claims, including acts of infringement, occurred in this judicial district.

7.      Defendant is subject to the personal jurisdiction of this Court by virtue of doing business in this judicial district.

## FACTUAL ALLEGATIONS

8.      In November 2009, while he was President and CEO of Smile Train, Mullaney entered into an agreement with Hyperion Books ("Hyperion") to write a book about Smile Train, tentatively titled "A Smile's Worth."  A copy of the November 2009 agreement is attached as

Exhibit A.   The Agreement was not authorized by the Smile Train Board of Directors ("the Board"), and in fact, was unknown to the Board at that time.

9.      Unbeknownst to the Board, the Agreement committed Smile Train to purchase 25,000 copies of the yet-to-be published book.   Under the Agreement with Hyperion, Mullaney contracted as the personal author of the book and was to receive a personal advance of $100,000, which was in fact paid to Mullaney's publishing agent.

10.     Previously, the Board had twice discussed the concept of a possible book about Smile Train, raised by Mullaney, in June 9, 2009 and October 14, 2009.   Mullaney stated that the book would be for Smile Train's benefit and be used in connection with further fundraising on behalf of Smile Train.   However, the Board never took any action to formally approve the book. In addition, the book discussed with the Board was vastly different from the book eventually written and provided to Hyperion by Mullaney.

11.     On January 5, 2010, Mullaney and Hyperion amended their November 2009 agreement ("Amended Hyperion Agreement").   The Amended Hyperion Agreement provided, among other things, that Smile Train would replace Mullaney as the author of the book, which was then tentatively titled "A Smile's Worth by Brian Mullaney."   A copy of the January 5, 2010 amendment is attached as Exhibit B.   This amendment was done because the proposed book about Smile Train is the property of Smile Train.

12.     Throughout early to mid-2010, Smile Train became suspicious of many of Mullaney's actions, including his attempts to expand Smile Train's mission outside of cleft repair on the specious basis that cleft was within sight of being eradicated world-wide.   Mullaney utilized Smile Train assets to attempt to convince the Board of Directors that Smile Train should expand its mission to include a number of other medical problems.   Smile Train's audit

3

committee conducted an investigation into Mullaney's activities between March and September 2010 and presented its findings to the Smile Train Board of Directors on September 21, 2010. As a result of the findings of the audit committee's investigation, the Board voted unanimously to terminate Mullaney's employment with Smile Train.

13.     On October 14, 2010, Smile Train and Mullaney entered into the Separation Agreement, pursuant to which, and subject to Mullaney's compliance and fulfillment of all of the terms and conditions of the agreement, Mullaney would cease acting as the CEO and President of Smile Train on June 30, 2011.  In order to ensure a smooth transition, Mullaney was to retain these formal titles until June 30, 2011, but he would have no operational role and was required to seek permission of the Board if he wanted to use any Smile Train material or assist Smile Train in any activities.  In addition, he would remain as a Director of Smile Train pursuant to the Separation Agreement.  The Separation Agreement is attached as Exhibit C.

14.     On November 10, 2010, despite the express terms of the October 14, 2010 Separation Agreement stripping him of the right to act on behalf of Smile Train without Board authorization, Mullaney attempted to unilaterally assign rights under the Original Book Agreement back to himself.  A copy of the attempted November 10, 2010 amendment is attached as Exhibit D.  This attempted assignment is invalid.

15.     During Mullaney's employment at Smile Train, he had access to Smile Train's donor list.  However, upon his separation from Smile Train, he no longer had any right to view, obtain or use Smile Train's confidential donor list – particularly for uses unrelated to Smile Train fundraising.   Smile Train's donor list is highly confidential and hugely important to the continued fundraising success of Smile Train.

16.    Mullaney now works as the CEO of an organization called WonderWork with offices located at 420 Fifth Avenue, New York, New York.  On its website, WonderWork represents itself as a non-profit organization that seeks to provide "miracle surgeries" to impoverished children throughout the world.  Neither WonderWork nor Mullaney is in any way affiliated with or related to Smile Train.

17.    On information and belief, Mullaney, or others acting on his behalf, unlawfully retained, accessed and/or obtained Smile Train's confidential donor list, among other highly confidential documents, in or around February 2011.  At that time, Mullaney was engaged in a malicious campaign to halt a proposed merger between Operation Smile, another non-profit which seeks to eradicate cleft lip and cleft palate in impoverished children world-wide, and Smile Train.  On information and belief, Mullaney, or others acting on his behalf, then leaked some or all of those confidential documents to the press.  The merger was subsequently called off.

18.    Sometime in 2011, Mullaney finished the manuscript for the book, which was titled "One Smile at a Time:  How an Accidental Do-Gooder Helped Change the Lives of Millions of Children" (the "Work").

19.    After reviewing a copy of the Work in June 2011, the Smile Train Board determined that, in addition to containing inaccuracies, portions of the Work portrayed Smile Train and certain of its sponsors and entities with which it worked in a negative light, was more self-promoting of Mullaney than of Smile Train, and, as a result, publication of the Work was not in Smile Train's best interests.

20.    Mullaney was informed and knew about Smile Train's decision not to publish the Work in or about July 2011.

21.     On information and belief, Mullaney retained an electronic copy of the manuscript for the Work, as well as early "galley" printings of the Work, after Smile Train's decision not to publish the Work.

22.     On information and belief, Mullaney, with knowledge of Smile Train's ownership of the Work and its decision not to publish the Work, arranged to have unauthorized copies of the Work printed.

23.     On or about October 15, 2012, Mullaney wrote a letter to two of Smile Train's donors enclosing an unauthorized copy of the Work.  A copy of the letter is attached as Exhibit E.

24.     At the date of filing, Smile Train was aware of at least four other donors who received a letter from Mullaney enclosing an unauthorized copy of the Work.

25.     On information and belief, Mullaney is unlawfully in possession of Smile Train's confidential donor list as a result of his retaining, accessing or obtaining a copy of the list in February 2011 in relation to his opposition of the proposed Smile Train/Operation Smile merger.

26.     On information and belief, Mullaney has used and continues to use Smile Train's confidential donor list without authorization from Smile Train to, among other things, solicit Smile Train donors to make donations unrelated to Smile Train.

27.     On information and belief, Mullaney has distributed, and continues to distribute, unauthorized copies of the Work to Smile Train donors and others members of the public in an effort to promote and benefit his new organization, WonderWork.

28.     The unauthorized copies of the Work distributed by Mullaney misleadingly purport to originate from, be sponsored by, or affiliated with Smile Train.  For example, the book

contains a page that appears to solicit donations and comments about the book on behalf of Smile Train, stating in part:

> You can learn more about us at www.smiletrain.org.
> And feel free to call or write us too.
> We would love to hear from you.
> **Smile Train**

A copy of the page is attached as Exhibit F.  Mullaney's explicit use of the word "us" directly communicates to recipients of the Work that Mullaney is still a part of Smile Train, which he has not been since at least June 30, 2011.

29.    The website of Mullaney's new, competing charity, WonderWork.org, misleadingly utilizes a photograph also appearing on the cover of the Work distributed by Mullaney.  The use of this photograph creates a likelihood of confusion between WonderWork and Smile Train and creates the impression that WonderWork is sponsored by or affiliated with Smile Train.  A copy of the Work photograph is attached as Exhibit G.  A copy of the photograph utilized on the WonderWork website is attached as Exhibit H.

30.    Smile Train registered its copyright in the Work with the United States Copyright Office, resulting in the issuance of registration number TXU001831886 on November 28, 2012. A true and correct copy of the record of Smile Train's registration from the Copyright Office's online catalog is attached as Exhibit I.

31.    Mullaney has also registered a copyright in the Work, resulting in the issuance of registration number TXU001833273 on September 21, 2012.  A true and correct copy of the record of Mullaney's registration from the Copyright Office's online catalog is attached as Exhibit J.

## FIRST CAUSE OF ACTION

### (Copyright Infringement)

32.     Smile Train repeats and realleges the allegations in paragraphs 1 through 31 as if fully set forth herein.

33.     The Work consists of material that is wholly original and is copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq.*

34.     Smile Train is the copyright owner of the Work, which constitutes a "work made for hire" under 17 U.S.C. § 101 because the work was created by Mullaney within the scope of his employment as CEO of Smile Train, ostensibly to assist Smile Train in raising money to fund its charitable operations.

35.     Mullaney does not own any rights in the Work.

36.     As set forth above, Smile Train registered its copyright in the Work with the United States Copyright Office, resulting in the issuance of registration number TXU001831886 on November 28, 2012.

37.     Prior to October 15, 2012, Mullaney had access to Smile Train's copyrighted materials.

38.     Mullaney distributed an unauthorized copy of the Work without Smile Train's license, authority or consent.

39.     On information and belief, Mullaney continues to distribute unauthorized copies of the Work without Smile Train's license, authority or consent.

40.     The unauthorized copies distributed by Mullaney are nearly identical to the Work.

41.     Mullaney's acts were done with knowledge of Smile Train's exclusive rights in the Work.

42.     Mullaney's conduct has been and continues to be intentional, willful, and with full knowledge of Smile Train's copyright interests in the Work.

43.     On information and belief, Mullaney has obtained gains, profits, and/or advantages as a result of his wrongful acts described above.

44.     As a result of Mullaney's unlawful conduct, Smile Train has been and will be substantially and irreparably injured.

45.     Smile Train has no adequate remedy at law.

**SECOND CAUSE OF ACTION**

**(Declaratory Judgment of Copyright Infringement)**

46.     Smile Train repeats and realleges the allegations in paragraphs 1 through 31, as if fully set forth herein.

47.     An actual case or controversy appropriate for resolution by declaratory relief exists between Smile Train and Mullaney.

48.     The Work consists of material that is wholly original and is copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq.*

49.     Smile Train is the copyright owner of the Work, which constitutes a "work made for hire" under 17 U.S.C. § 101 because the work was created by Mullaney within the scope of his employment as CEO of Smile Train, ostensibly to assist Smile Train in raising money to fund its charitable operations.

50.     Mullaney does not own any rights in the Work.

51.     As set forth above, Smile Train registered its copyright in the Work with the United States Copyright Office, resulting in the issuance of registration number TXU001831886 on November 28, 2012.

52.     On information and belief, Mullaney has made unauthorized copies of the Work that are nearly identical to the Work.

53.

54.     Accordingly, the Court should declare that unauthorized copying or distribution of the Work by Mullaney infringes Smile Train's registered copyright in the Work.

### THIRD CAUSE OF ACTION

### (False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a))

55.     Smile Train repeats and realleges the allegations in paragraphs 1 through 31 as if fully set forth herein.

56.     Since it was founded in 1999, Smile Train has advertised, promoted and marketed its services in interstate commerce under the trade name and trademark SMILE TRAIN.  In addition, Smile Train owns U.S. trademark registrations for THE SMILE TRAIN (No. 2,214,655) and SMILETRAIN CHANGING THE WORLD ONE SMILE AT A TIME mark and design (No. 3,688,636) (together with SMILE TRAIN, the "Smile Train Marks").

57.     As a direct result of Smile Train's longstanding use, advertising and marketing, the Smile Train Marks have acquired a secondary and distinctive meaning among the public who have come to identify the Smile Train Marks with Smile Train and its business and services.

58.     Mullaney has utilized the Smile Train Marks in conjunction with his unauthorized copying and distribution of the Work.  As a result, the public is likely to be confused into believing that Smile Train authorized, approved or sponsored the unauthorized copies of the Work distributed by Mullaney.

59.     In utilizing the same photo for his new charity, WonderWork, that was used in the Work, the public is further likely to be confused into believing that Smile Train authorizes, approves or sponsors WonderWork.

60.     The continuing use of the Smile Train Marks in conjunction with Mullaney's unauthorized copying and distribution of the Work will dilute the goodwill and reputation of Smile Train.

61.     Mullaney, by misappropriating and using the Smile Train Marks in connection with his unauthorized copying and distribution of the Work, is misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of those unauthorized copies of the Work.

62.     Defendant has used Plaintiff's SMILE TRAIN Marks in interstate commerce willfully and in connection with the promotion of his own organization, with full knowledge of the falsity of the designation of the origin, description and representation, in an effort to mislead the public into believing that Defendant's services are authorized by or emanate from Smile Train.

63.     The aforementioned acts constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64.     On information and belief, Mullaney has obtained gains, profits and/or advantages as a result of his unlawful acts.

## FOURTH CAUSE OF ACTION

### (Commercial Disparagement)

65.     Smile Train repeats and realleges the allegations in paragraphs 1 through 31, as if fully set forth herein.

66.     In drafting the Work, and in subsequently creating and distributing unauthorized copies of the Work, Mullaney made disparaging statements about Smile Train and its services that were false, including but not limited to statements containing inaccurate facts surrounding interactions between Smile Train and officials in a partner country.

11

67.    Mullaney made such disparaging statements with knowledge that they were false, or in reckless disregard for their truth or falsity.

68.    On information and belief, members of the public, including potential Smile Train donors, have been deceived by the false and disparaging statements made by Mullaney.

69.    Unless enjoined, Mullaney's dissemination of the false and disparaging statements will alienate potential donors and has the potential to damage the relationship between Smile Train and the subject partner country.

70.    As a result of Mullaney's disparaging statements, Smile Train has been damaged and will continue to be damaged in an amount to be determined at trial.

71.    Mullaney's actions were willful, wanton and in bad faith, demonstrating a complete absence of care and attention to duty and a high degree of moral culpability, and were in conscious disregard of Smile Train's rights.  Smile Train is therefore entitled to an award of punitive and exemplary damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Misappropriation of Trade Secrets)

72.    Smile Train repeats and realleges the allegations in paragraphs 1 through 31, as if fully set forth herein.

73.    Smile Train has invested significant time and effort in developing and compiling knowledge of potential donors, including their contact details.

74.    Smile Train derives economic value from its confidential donor list, which is not generally known to or obtainable by other persons who can obtain economic value from its disclosure or use.

75.    Smile Train's confidential donor list is a trade secret.

76.     As a former officer and director of Smile Train, Mullaney had a duty to maintain the secrecy of Smile Train's donor list.

77.     In paragraph 12 of his Separation Agreement with Smile Train, Mullaney expressly agreed to "at all times keep confidential all information concerning Smile Train" and its "donors." *See* Exhibit C.

78.     On information and belief, Mullaney misappropriated Smile Train's donor list by keeping one or more copies of Smile Train's donor list after his termination from Smile Train.

79.     On information and belief, Mullaney further misappropriated Smile Train's donor list by using it to solicit donations for his new organization, WonderWork.

80.     On information and belief, unless enjoined by this Court, Mullaney will continue to misappropriate Smile Train's trade secrets.

81.     Smile Train has suffered and continues to suffer irreparable injury, for which it has no adequate remedy at law, in that the injury to Smile Train from Mullaney's conduct includes a loss of trade secrets and confidential business information and the damage to Smile Train and the wrongful conduct are continuing, such that Smile Train would be required to bring a multiplicity of suits to achieve compensation for the injuries caused thereby.

82.     As a result, Smile Train is entitled to preliminary and permanent injunctive relief against Mullaney.

### SIXTH CLAIM FOR RELIEF

### (Declaratory Judgment of Copyright Ownership)

83.     Smile Train repeats and realleges the allegations in paragraphs 1 through 31, as if fully set forth herein.

84.     An actual case or controversy appropriate for resolution by declaratory relief exists between Smile Train and Mullaney.

85.     The Work consists of material that is wholly original and is copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq.*

86.     Smile Train is the copyright owner of the Work, which constitutes a "work made for hire" under 17 U.S.C. § 101 because the work was created by Mullaney within the scope of his employment as CEO of Smile Train, ostensibly to assist Smile Train in raising money to fund its charitable operations.

87.     Mullaney does not own any rights in the Work.

88.     As set forth above, the parties have each registered a copyright in the Work with the United States Copyright Office.  Smile Train's registration number is TXU001831886 and Mullaney's registration number is TXU001833273.

89.     Accordingly, the Court should declare that Smile Train is the owner of the copyright in the Work, that Smile Train's copyright registration (number TXU001831886) is valid and enforceable, and that Mullaney's copyright registration (number TXU001833273) is invalid and unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Smile Train respectfully prays and requests that this Court enter a judgment:

(a)     declaring that Mullaney willfully infringed Smile Train's copyright in the Work by his unauthorized reproduction and distribution thereof, in violation of Smile Train's exclusive rights under the Copyright Act, 17 U.S.C. § 101 *et seq.*;

(b)     permanently enjoining Mullaney and his agents, servants, employees, officers, attorneys, successors, licensees, partners and assigns, and all persons acting in concert with them, from further infringing conduct in connection with the Work or any other copyrighted material owned by Smile Train;

(c)     compelling Mullaney and his agents, servants, employees, officers, attorneys, successors, licensees, partners and assigns, and all persons acting in concert with them, to return and/or destroy all copies (including electronically-stored copies) of the Work or any other copyrighted material owned by Smile Train;

(d)     permanently enjoining Mullaney and his agents, servants, employees, officers, attorneys, successors, licensees, partners and assigns, and all persons acting in concert with them, from further misappropriating Smile Train's trade secrets by using or disseminating Smile Train's confidential donor list;

(e)     compelling Mullaney and his agents, servants, employees, officers, attorneys, successors, licensees, partners and assigns, and all persons acting in concert with them, to return and/or destroy all copies (including electronically-stored copies) of Smile Train's confidential donor list;

(f)     awarding Smile Train statutory damages pursuant to 17 U.S.C. § 504;

(g)     awarding Smile Train compensatory damages in an amount to be determined at trial;

(h)     ordering Mullaney to account for any profits attributable to the infringement of Smile Train's copyrighted materials;

(i)     ordering Mullaney to account for any profits attributable to the misappropriation of Smile Train's confidential donor list;

(j)     declaring that Smile Train is the owner of the copyright in the Work, that Smile Train's copyright registration (number TXU001831886) is valid and enforceable, and that Mullaney's copyright registration (number TXU001833273) is invalid and unenforceable;

(k)     granting Smile Train punitive and exemplary damages in an amount to be determined at trial;

(l)     awarding costs and attorneys' fees pursuant to 17 U.S.C. § 505; and

(m)     granting such other and further relief at law or equity as the Court may deem proper, just and equitable under the circumstances.

Dated:  New York, New York
         January 2, 2013

Respectfully Submitted,

KAYE SCHOLER LLP

By: _____

    Vincent A. Sama
    Teisha G. Covino

425 Park Avenue
New York, New York 10022
(212) 836-8765 (phone)
(212) 836-6622 (fax)

*Attorneys for Plaintiff Smile Train, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 2, 2013, I caused a true   and correct copy of the foregoing First

Amended Complaint to be served by hand and electronic mail upon the following:

Sevan Ogulluk
JONES DAY
222 East 41st Street
New York, New York  10017
(212) 326-3977
sogulluk@JonesDay.com

*Attorneys for Defendant Brian F. Mullaney*


                                   /s/ Teisha G. Covino